# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTRELL TEEN, # 461504, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-cv-997-JPG |
| | ) | |
| SGT. NICHOLS, | ) | |
| and KEMPT, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff is a pretrial detainee at the St. Clair County Jail ("the Jail"). He originally

brought this civil rights action on March 13, 2018, when it was filed as *Teen v. Smith, et al.*, Case

No. 18-568-JPG-RJD. After screening the Complaint, the Court severed a number of Plaintiff's

claims from the original case into separate actions. (Doc. 1). The instant case contains Counts 4

and 10, which were described as follows:

> **Count 4:** First Amendment retaliation claim against Nichols for opening and
> reading Plaintiff's legal mail, after Plaintiff attempted to file case(s) in court while
> Plaintiff was housed on AB-Block;
>
> **Count 10:** Fourteenth Amendment deliberate indifference claim, and First
> Amendment retaliation claim, against Kempt and Nichols for allowing a mentally
> ill inmate to remain improperly housed in L-Block in February 2018, resulting in
> injury to Plaintiff.

This case is now before the Court for a preliminary review of the Complaint pursuant to

28 U.S.C. § 1915A. Under § 1915A, the Court is required to screen prisoner complaints to filter

out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of

the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be

granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, some of the claims in this action survive threshold review under § 1915A.

**The Complaint**

The portions of the Complaint which relate to Counts 4 and 10 are summarized as follows.

Plaintiff began to submit captain complaints at the Jail concerning several conditions there, beginning in January 2016. Plaintiff has also filed previous lawsuits against various Jail officials during his imprisonment. (Doc. 2, p. 4). Plaintiff asserts that he has been subjected to retaliatory actions as a result of these complaints and lawsuits.

Plaintiff's first claim against Nichols (Count 4) arose while Plaintiff was housed on the AB-Block of the Jail. Plaintiff had been housed on at least 3 other wings of the Jail before he was moved to AB-Block in December 2016. (Doc. 2, p. 6). Before Plaintiff arrived at AB-Block, he had been under a lockdown in H-Block, where he was unable to use the law library.

After Plaintiff was transferred to AB-Block, he regained some access to the law library, and found information about the district court. (Doc. 2, p. 6). He claims that when jail staff noticed "legal mail" coming to Plaintiff, the "interruption began." *Id.* Unnamed staff opened Plaintiff's legal mail before giving it to him, and he witnessed Sgt. Nichols opening and reading his legal mail. *Id.* Plaintiff asserts that the opening of his legal mail was retaliatory, and "intended to inhibit [his] pursuit for help." *Id.*

Plaintiff's claim designated as Count 10 arose during February 2018, while Plaintiff was housed on L-Block at the Jail. Plaintiff states that on February 3, 2018, officers "incorrectly housed" a mentally ill inmate on L-Block, instead of on the wing (I-Block) where inmates with mental illnesses are normally placed. (Doc. 2, pp. 9-10). Plaintiff asserts that he has training and 9 years of experience in caring for mentally ill persons, which enabled him to recognize the inmate's mental condition. Plaintiff informed C/O Kempt of the situation, but Kempt "refused to

3

acknowledge the issue." (Doc. 2, p. 10). Kempt refused to supply Plaintiff with captain complaint forms, and would not summon a supervisor after Plaintiff requested to talk to one.

The mentally ill inmate proceeded to talk of stabbing others or himself, which caused other prisoners to feel threatened. Eventually a fight broke out which involved Plaintiff, the mentally ill inmate, and other inmates. Plaintiff attempted to defuse the situation, and Plaintiff's hand was injured during the incident, drawing blood. At 8:30 p.m. on February 9, 2018 (which was apparently the date of the fight), Plaintiff submitted a captain complaint. Sgt. Nichols was the supervisor on duty that night, but Nichols did nothing about the safety concerns.

Much later, on or about February 27, 2018, Sgt. Collins moved the mentally ill inmate to I-Block with the other mentally ill prisoners. Plaintiff concludes that Kempt and Nichols, who disregarded his concerns, did so out of retaliation. (Doc. 2, p. 10).

Plaintiff seeks compensatory, punitive, and special damages for the violations of his rights. (Doc. 2, p. 11).

### Merits Review Pursuant to 28 U.S.C. § 1915A

For clarity, the Court shall continue to refer to the claims in this action as they were numbered in the original case.

> **Count 4:** First Amendment retaliation claim against Nichols for opening and reading Plaintiff's legal mail, after Plaintiff attempted to file case(s) in court while Plaintiff was housed on AB-Block;

> **Count 10:** Fourteenth Amendment deliberate indifference claim, and First Amendment retaliation claim, against Kempt and Nichols for allowing a mentally ill inmate to remain improperly housed in L-Block in February 2018, resulting in injury to Plaintiff.

**Count 3 – Retaliation – Sgt. Nichols**

Jail and prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would deter a person of "ordinary firmness" from engaging in First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *See McKinley v. Schoenbeck*, __ F. App'x __, No. 17-1709, 2018 WL 1830942 at *3 (7th Cir. Apr. 17, 2018) (quoting *Surita v. Hyde*, 665 F.3d 860, 878-79 (7th Cir. 2011)); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Plaintiff asserts that when he began his attempts in December 2016 or early 2017 to seek redress in the courts, he started to receive "legal mail." He does not describe whether this "legal mail" came from the court clerk or from law firms or attorneys. The identity of the sender would determine whether or not jail officials had a right to open and inspect an envelope outside Plaintiff's presence. Corrections officials may legitimately open non-privileged incoming mail as a security measure, to keep contraband out of the institution. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974). Correspondence from a court to a litigant is considered a public document, and an inmate's right to confidential lawyer-client communication is not violated if such a letter is opened before delivery to the inmate. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir.

1996); *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987).  However, mail from an attorney that is clearly marked as confidential is entitled to greater protection, and should be opened only in the presence of the inmate.  *Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005); *see also Wolff*, 418 U.S. at 576.

In this case, Plaintiff has not asserted that Jail officials hindered his access to the courts by improperly opening attorney-client mail.  Instead, he articulates a retaliation claim, stating that Nichols (and possibly other unidentified officials) opened what he characterizes as "legal mail" with the intention to deter Plaintiff from engaging in the very First Amendment activity that generated that mail – that is, his efforts to seek redress in the courts.  Notably, even if a Defendant's action (such as opening non-privileged mail) would not be unconstitutional in and of itself, if the action was taken in retaliation for the exercise of a constitutionally protected right, then it may support a § 1983 claim.  *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")).

The ultimate issue in Plaintiff's retaliation claim is whether he experienced an adverse action or actions that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the Defendant's decision to take the retaliatory action.  *Bridges*, 557 F.3d at 551.  This is a question that cannot be resolved at the pleadings stage of this case.  Therefore, the retaliation claim in **Count 4** survives review under § 1915A and shall proceed for further consideration against Nichols.

**Count 10 – Deliberate Indifference & Retaliation – Kempt & Nichols**

The Due Process Clause of the Fourteenth Amendment governs claims for unconstitutional conditions of confinement brought by pretrial detainees. *See Smith v. Dart*, 803 F.3d 304 (7th Cir. 2015); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012); *Forest v. Prine*, 620 F.3d 739, 744-45 (7th Cir. 2010); *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). The Eighth Amendment governs claims for convicted prisoners. *Id.* As the Seventh Circuit explained:

> [A] pretrial detainee is entitled to be free from conditions that amount to "punishment," *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), while a convicted prisoner is entitled to be free from conditions that constitute "cruel and unusual punishment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In both cases, however, the alleged conditions must be objectively serious enough to amount to a constitutional deprivation, and the defendant prison official must possess a sufficiently culpable state of mind.

*Smith*, 803 F.3d at 309.

The Seventh Circuit has historically applied the same standards to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners). *See Smith*, 803 F.3d at 309-10; *Grieveson v. Anderson*, 538 F.3d 763, 771-72, 777-79 (7th Cir. 2008); *Ayoubi v. Dart*, No. 17-1662, 2018 WL 1445986, at *3 (7th Cir. March 23, 2018) (unpublished) (Fourteenth Amendment and Eighth Amendment standards "are virtually indistinguishable"). Under the Eighth Amendment, two elements are required to establish a constitutional violation for conditions of confinement in prison. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 834. The second requirement is a subjective element – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from

7

those conditions. *Farmer*, 511 U.S. at 837, 842. To satisfy this element, a plaintiff must show that "the defendant 'possess[ed] a purposeful, a knowing, or possibly a reckless state of mind' with respect to the defendant's actions (or inaction) toward the plaintiff." *Davis v. Wessel*, 792 F.3d 793, 801 (7th Cir. 2015) (quoting *Kingsley v. Hendrickson*, __U.S.__, 135 S. Ct. 2466, 2472 (2015)).

Plaintiff's particular claim focuses on the Defendants' failure to protect him from the harm he suffered when the mentally ill inmate's behavior triggered a fight in the cellblock. The Supreme Court has held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id*.; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). Conduct that amounts merely to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

In Plaintiff's case, he complained to Kempt about the fact that the mentally ill inmate was

housed on L-Block, instead of the wing reserved for inmates with mental illness. The Complaint does not disclose exactly what information Plaintiff conveyed to Kempt at that time. It is also unclear whether Plaintiff informed Kempt or any other official of the inmate's remarks about stabbing or any other threatening comments or behavior. The fight which injured Plaintiff occurred 6 days after the inmate was placed in Plaintiff's cellblock. (Doc. 2, p. 10). Plaintiff may have a viable claim against Kempt, if Kempt was sufficiently informed about the danger posed or threats conveyed by the inmate before the fight occurred. The current Complaint, however, does not provide enough information to support a claim against Kempt for deliberate indifference to a known threat, as opposed to a merely negligent response to Plaintiff's concerns.

The Complaint also does not support a claim against Nichols for failure to protect Plaintiff from the injury he suffered. Plaintiff indicates that Nichols would have received his captain complaint on the night that the fight broke out – but Plaintiff submitted his complaint only after the injury occurred. (Doc. 2, p. 10). Based on these facts, Nichols was not made aware of any danger or threat to Plaintiff's safety from the mentally ill inmate in advance of the incident, at a time when he could have taken action to prevent it. He therefore cannot be held liable for deliberate indifference to the danger posed by the inmate, or in other words, for failing to protect Plaintiff from the injury he suffered on February 9, 2018.

Turning to the retaliation portion of Count 10, Plaintiff alleges that his complaints about the improper housing of the mentally ill prisoner fell on deaf ears. He states, "this disregard by officers involved in civil complaints seem[s] to be obviously retaliatory." (Doc. 2, p. 10). While Plaintiff does not point to a specific complaint or lawsuit that allegedly triggered the retaliatory action of ignoring Plaintiff's concerns about the mentally ill inmate, earlier in his statement of claim he referenced the fact that he "is involved in multiple prison condition suits." (Doc. 2, p.

4). This Court's electronic docket reflects that at the time that Nichols and Kempt allegedly retaliated by disregarding Plaintiff's concerns, Plaintiff had 5 civil lawsuits pending in this Court. Nichols was named as a Defendant in one case which was pending in February 2018, *Teen v. Kenny, et al.*, Case No. 17-cv-918-JPG-RJD (opened Aug. 28, 2017).[1] Given this background, and liberally construing his Complaint, Plaintiff sets forth a "chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Accordingly, the retaliation portion of Plaintiff's claim in **Count 10** against Nichols and Kempt may proceed for further consideration. The portion of **Count 10** that claims Kempt and Nichols failed to protect Plaintiff from a known risk of harm, however, shall be dismissed without prejudice at this time, for the reasons explained above.

### Disposition

**COUNT 10** shall proceed only on the retaliation portion of the claim, against both Nichols and Kempt. The portion of **COUNT 10** alleging that Kempt and Nichols were deliberately indifferent and failed to protect Plaintiff from a known risk of harm is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

In order for **COUNT 4** and the retaliation portion of **COUNT 10** to proceed, the Clerk of Court shall prepare for Defendants **NICHOLS** and **KEMPT**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, the Memorandum and Order at Doc. 1, and this Memorandum and Order to each Defendant's place of employment as

---

[1] The case against Nichols was severed from an action originally filed on June 5, 2017, captioned *Teen v. St. Clair Cnty. Jail*, Case No. 17-cv-594-JPG-SCW. Two other claims were also severed from that case: *Teen v. Smith, et al.*, Case No. 17-cv-916-JPG-DGW, and *Teen v. Lazante, et al.*, Case No. 17-cv-929-JPG-RJD. Plaintiff filed another case on January 4, 2018: *Teen v. Brandy, et al.*, Case No. 18-cv-13-JPG-DGW.

identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 23, 2018**

s/J. Phil Gilbert
United States District Judge